IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

SHEVAUN E. BROWNE,                )
                                  )
            Petitioner,           )
                                  )
vs.                               )          Criminal No. 2012-02
                                  )          Civil No. 2014-58
UNITED STATES OF AMERICA,         )
                                  )
            Respondent.           )
_____)

## REPORT AND RECOMMENDATION

Before the Court is petitioner Shevaun E. Brown's Motion to Vacate, Set Aside or Correct

Sentence [DE 124] pursuant to 28 U.S.C. § 2255.  The government filed a response to which

petitioner replied.  [DEs 137, 143].  For the reasons that follow, it is recommended that petitioner's

motion be denied.

## I.     BACKGROUND

As the parties are familiar with the underlying facts of this case, only those facts relevant

to this discussion will be recited.  On January 11, 2011, Keven Fessale and Kadeem Thomas

committed an armed robbery of Merchants Commercial Bank in St. John, Virgin Islands. They

fled in a vehicle belonging to Shevaun Browne. On January 19, 2012, a grand jury returned a four-

count indictment against petitioner and his two co-defendants.  Petitioner was charged with

conspiracy, in violation of 18 U.S.C. § 1951(a) (count one) and bank robbery, in violation of 18

U.S.C. § 2113(a) and (d) (count two).

On March 28, 2012, a jury convicted petitioner on both counts.[1]  [DE 68].  On September

_____

[1]      Petitioner's conviction followed a three-day jury trial.  *See* Mar. 26, 2012 Trial Tr. ("TT1") [DE 119], Mar. 27, 2012 Trial Tr. ("TT2") [DE 119-1], and Mar. 28, 2012 Trial Tr. ("TT3") [DE 119-2].

17, 2012, the District Court sentenced petitioner to a term of 165 months, a supervised release term of three years on count one and five years on count two, a $200.00 special assessment and $47,529.38 in restitution.  *See* 2d Am. Judgment at 2-5 [DE 115].  Petitioner appealed his conviction, arguing the District Court erred by denying his motion to strike Juror 93 for cause. Petitioner argued in the alternative that the District Court erred by not allowing him to withdraw his final peremptory strike and use it on Juror 93.  Finally, petitioner argued the evidence was insufficient to support his conviction for conspiracy.  *United States v. Browne*, 525 Fed. Appx. 213 (3d Cir. 2013).[2]

The Third Circuit Court of Appeals rejected petitioner's arguments and affirmed his conviction in a judgment issued on May 24, 2013.  *Id.*; [DE 121].  Petitioner did not appeal the decision and the judgment became final ninety days later on August 22, 2013.[3]  Accordingly, the statutory period during which petitioner could timely file his petition ended on August 22, 2014.[4] Petitioner's petition, filed May 19, 2014, is thus timely.[5]

---

[2]      The Third Circuit consolidated the appeals of petitioner and co-defendant Kadeem Thomas.

[3]      *See Gonzalez v. Thaler*, 132 S. Ct. 641, 653 (2012) (holding that a federal judgment becomes final, for purposes of the AEDPA's statute of limitations, when the Supreme Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or, if the prisoner does not seek certiorari, when the time for filing a certiorari petition expires); *United States v. Thomas*, 713 F.3d 165, 174 (3d Cir. 2013) (explaining when a petitioner does not pursue appeals through the United States Supreme Court, his judgment becomes final after the time for pursuing direct review in either the Supreme Court or in state court expires.) (citing *Gonzalez*, 132 S. Ct. at 641); SUP. CT. R. 13(1), (3) ("[A] petition for a writ of certiorari . . . is timely when it is filed . . . within 90 days after entry of the judgment. . . . The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate[.]").

[4]      The Antiterrorism and Effective Death Penalty Act of 1996 establishes a one-year statute of limitations period for section 2255 motions, "running from the latest of" four specified dates.  28 U.S.C. § 2255(f).  As in most section 2255 cases, here, the relevant date is "the date on which the judgment of conviction becomes final."  *Id.*

[5]      Under the "prison mailbox rule," a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.  *Houston v. Lack*, 487 U.S. 266, 275-76 (1988); *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998); *Irizarry v. United States*, 2012 U.S. Dist. LEXIS 161744, at *7 (E.D. Pa. Nov. 9, 2012).  While the instant motion was docketed on June 6, 2014, petitioner properly certified therein that he placed the motion in the prison mailing system on May 19, 2014.  *See* Rule 3(d), Rules Governing § 2255 Proceedings (explaining "timely

Petitioner raises eleven grounds for post-conviction relief. The first six grounds are asserted under the theory of ineffective assistance of trial counsel. Grounds eight through ten allege errors by the District Court. In the remaining ground, plaintiff alleges prosecutorial misconduct.

## II.    LEGAL STANDARDS

### A.    28 U.S.C. § 2255

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 allows petitioners to collaterally attack their sentences by moving "the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The remedy is intended only where "the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation marks omitted); *see also United States v. Addonizio*, 442 U.S. 178, 184 (1979) (explaining "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment"). A section 2255 evidentiary hearing is required unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord United States v. Padilla-Castro*, 426 Fed. Appx. 60, 63 (3d Cir. 2011).

In order to prevail on a section 2255 motion, a petitioner must show one of the following: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2)

---

filing may be shown by [*inter alia*] a declaration in compliance with 28 U.S.C. § 1746 . . ., which must set forth the date of deposit and state that first-class postage has been prepaid") (alteration added); FED. R. APP. P. 4(c)(1) (same).

the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  If a court finds any of these grounds, it must vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate.  *Id*. § 2255(b).

A section 2255 petition is not a substitute for an appeal.  *Hodge v. U.S.*, 554 F.3d 372, 379 (3d Cir. 2009).  Thus, the general rule is that a petitioner procedurally defaults on a claim if he "neglected to raise [it] on direct appeal."  *Id.* (citation omitted); *Massaro v. United States*, 538 U.S. 500, 504 (2003).[6]  Moreover, a 2255 petition may not "be used to relitigate matters decided adversely on appeal."  *Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074-75 (3d Cir. 1985) (citation omitted).  Because petitioner is proceeding *pro se*, the Court must construe his motion liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## B.    Ineffective Assistance of Counsel

In order to succeed on an ineffective assistance of trial counsel claim, a petitioner must show (1) counsel's representation was deficient and (2) the deficient performance "prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[7]  Regarding the "deficient" prong, a petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  *Id*. at 688-89 ("the

---

[6]    A petitioner properly raises ineffective assistance of counsel arguments under section 2255 rather than on direct appeal.  *See Massaro*, 538 U.S. at 504 (explaining it is "preferable" that such claims be considered on collateral review where the record for such claims may be properly developed); *accord United States v. Garcia*, 516 Fed. Appx. 149 (3d Cir. 2013) ("It is well-settled that this Court ordinarily does not review claims of ineffective assistance of counsel on direct appeal.") (citing *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003)).

[7]    A court has discretion to dispose of a claim at either prong, as there is no required order to the *Strickland* inquiry.  *Strickland*, 466 U.S. at 697 (explaining a court need not "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "address both components of the inquiry if the defendant makes an insufficient showing on one").  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id*.

performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances"); *accord Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 688. As for the prejudice prong, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

The petitioner bears the burden of establishing his ineffective assistance of counsel claim by a preponderance of the evidence. *United States v. Serrano*, 798 F. Supp. 2d 634, 641 (E.D. Pa. 2011) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)). Judicial scrutiny of counsel's performance is highly deferential and a petitioner must overcome a "strong presumption" that counsel's strategy and tactics "fall[] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Accordingly, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

## III. DISCUSSION

### A. Ineffective Assistance of Trial Counsel

1.    Ground one:  Representation during voir dire

Petitioner argues his counsel was ineffective for failing to insist on a voir dire examination of Juror 23 after the juror informed the Court that she was fasting for religious purposes and taking medication for back pain. Pet'r's Mot. at 5. In particular, petitioner faults trial counsel for not asking Juror 23 whether her back pain, medication or religious fasting may interfere with her ability to be fair and impartial. Pet'r's Mem. at 11. Petitioner further faults his counsel for not moving that Juror 23 be excused for cause in violation of the Jury Selection and Service Act

*Browne v. USA*
Criminal No. 2012-02
Civil No. 2014-58
Page 6

("JSSA"), 28 U.S.C. § 1865.  Relevant here, the JSSA authorizes a judge to exclude a juror who is "incapable, by reason of . . . physical infirmity, to render satisfactory jury service."  28 U.S.C. § 1865(b)(4).

The Sixth Amendment guarantees the right to be tried "by an impartial jury" which "consists of nothing more than jurors who will conscientiously apply the law and find the facts." *United States v. Jones*, 566 F.3d 353, 358 (3d Cir. 2009) (emphasis and internal quotation marks omitted) (quoting *Lockhart v. McCree*, 476 U.S. 162, 178 (1986)).  A trial court is vested with broad discretion in structuring and conducting voir dire and determining whether to excuse a juror for cause.  *See United States v. Jones*, 566 F.3d 353, 358 (3d Cir. 2009) ("*Voir dire* is conducted under the supervision of the trial court and is left to its sound discretion."); *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991) (recognizing a trial court's "wide discretion" in conducting voir dire); FED. R. CRIM. P. 24(a)(1) (stating "[t]he court may examine prospective jurors or may permit the attorneys for the parties to do so").  A judge "must reach conclusions as to impartiality and credibility by relying on [his or her] own evaluations of demeanor evidence and of responses to questions."  *United States v. Cunningham*, 694 F.3d 372, 393 (3d Cir. 2012).

Here, the record indicates the Court conducted a diligent voir dire that included a discussion regarding Juror 23's religious needs and back pain concerns:

THE COURT: . . . Tell us your juror number.

JUROR MEMBER: 23.

THE COURT: Okay. Yes.

JUROR MEMBER: This is our religious week and I'm fasting. And if we go all morning and evening for prayer meeting, that is one thing. Second thing. That I have been suffering with back pain, I just saw Dr. Bacot last week and I'm on medication and all that, so I don't know if I can sit here for whole day.

*Browne v. USA*
Criminal No. 2012-02
Civil No. 2014-58
Page 7

THE COURT: Well, we take frequent breaks to make sure –

JUROR MEMBER: I -- I know, but I -- because of fasting and all that, I have special food and, so we can't eat just anything.

THE COURT: Well, we always try to accommodate those --

JUROR MEMBER: I'm vegetarian. Won't get anything here. I'll appreciate it if I --

THE COURT: Okay. Well, you said you're fasting, though?

JUROR MEMBER: Yeah.

THE COURT: Okay. All right, ma'am, we'll consider it.[8]

***

JUROR MEMBER: 23.

THE COURT: Okay. Yes.

JUROR MEMBER: This is 9 days of fasting, 9 days of worshipping. We do morning and evening. And I don't know if I can sit here for whole day. I've been suffering with back pain and it's going in my right leg. It's so hard to sit down there for the day.

THE COURT: All right.

JUROR MEMBER: Otherwise I would -- if it was not for fasting, I would have even tolerated that part, but it will be really difficult, sir.

THE COURT: All right. Well, for right now, the jury that has been selected by all parties includes you, *so what I can tell you is that we accommodate every dietary concern and all physical concerns.*

JUROR MEMBER: I don't eat from outside. That's the problem. I'm vegetarian. And everywhere you go, they touch this thing and that thing, and all meat part.

THE COURT: All right. But you said you're fasting, though?

JUROR MEMBER: Yeah.

---

[8]    TT1 at 24:14-25, 25:1-12.

> THE COURT: Okay. That means you're not eating, correct, for a certain period of time?
>
> JUROR MEMBER: No, I eat, but there are certain kind [sic] of food --
>
> THE COURT: Yes. All right.
>
> JUROR MEMBER -- that we eat.
>
> THE COURT: All right. All right. Well, we're going to work to make sure we can accommodate you. All right. Thank you.
>
> JUROR MEMBER: I'll be able to go in the evening?
>
> THE COURT: *Yes, we'll accommodate you.*[9]

Thereafter, the Court heard argument from the government and defense counsel in favor of striking

Juror 23:

> THE COURT: Did Counsel have anything to add with respect to that juror?
>
> MR. HODGE: Yes, I do, Your Honor.
>
> THE COURT: From the Government?
>
> MS. SMITH: Your Honor, given the juror is adamant and her determination in her conviction, religiously and otherwise, I just don't see that we would be doing justice by keeping her. She is appearing -- she appears to be emotionally distraught. She --
>
> THE COURT: Why do you say that? The juror seemed to be very cogent and willing to state her position very clearly. She certainly didn't want to be here, but just about everyone who shows up doesn't want to be here. I don't think if I asked anyone, is this convenient for you, they would say, yes, it is. This juror, much like we have with jurors who are Seventh Day Adventist and have to get home on Friday at a certain time, or who have been sequestered, *the Court has made accommodations for them, for their diets and for their worship needs*. This juror indicated that she eats a certain type of diet. But we've done that with many jurors before. We've done it with jurors who have very serious diabetic conditions and a whole host of other conditions. This juror did not appear distraught as you said, she seemed to be very clear. She certainly wasn't happy, but then again, most jurors aren't happy to be here for a period of the morning. *Besides, jurors can also bring*

---

[9]    TT1at 66:12-25, 67:1-21 (emphasis added).

*their own lunch if they choose to.* If they don't want to do -- don't want to take advantage of what is offered by the court. There is no prohibition on that. The Court makes every accommodation for jurors.

MS. SMITH: I agree, Your Honor.

THE COURT: Including, in long trials, having stretch breaks, stand-up breaks, and telling one juror -- I recall in a trial -- whenever you feel like you need to stand up, stand up. So I understand your position. Attorney John-Baptiste, what's your position?

MR. JOHN-BAPTISTE: Your Honor, I would actually move for the juror to be removed, Your Honor. The juror, as the Court pointed out, does not want to be here. The juror is not happy about being here, Your Honor. I think in light of that, because my client has a right -- he has a right to have a fair and impartial jury, someone willing to sit down and deliberate the facts, as per the law that the Court will give, Your Honor. Clearly, I think that this juror, because she doesn't want to be here, perhaps at minimum, would be, you know, more prone to give us a hasty determination or to hastily, you know, consider the facts and apply the law to those facts, Your Honor. So I would ask that that juror be -- that juror be excused, Your Honor.

THE COURT: All right. Attorney Hodge, you share the position?

MR. HODGE: I also ask that that juror be removed, Your Honor. She did seem distraught to me and full of anxiety. She gave both medical and religious reasons why she didn't want to be here. *She said she's fasting and she's meditating [sic], which indicates, to me, she won't be paying attention or listening to the evidence as presented.* Because, for religious reasons, she has made it clear and she was very adamant, she is not going to be focused on this because of religious reasons and dietary reasons and medical reasons. *She can't sit too long, her back hurts and so she said even if it wasn't for medical reasons --*

THE COURT: All right. I don't need you to repeat what's known.

MR. HODGE: Very well.

THE COURT: I'll just state this to the parties. The Court gets more reasons to get out of jury service than any other thing in a case. *Back issues, leg issue, diabetic issue, hypertension issue; you name it, we've had it. So, you know, the Court will take your petition under advisement. We've certainly had it for religious reasons, too, and for any number of reasons.* With respect to distraught, in one trial, just a couple weeks ago, several jurors were crying in the middle of the evidence. And that was not a basis to strike the juror. It was a child pornography case. So someone who is not crying and is upset -- I've had people who are upset because they don't

wish to spend time here, period. And they certainly appear more distraught than this juror did, but the Court will keep the matter under advisement. The Court is mindful that we have two alternates, to the extent it becomes an issue. But we'll try to accommodate, as we do with every case, this juror.[10]

While Attorney John-Baptise objected to seating this juror, petitioner correctly observes that Attorney John-Baptiste failed to question Juror 23 (or request the Court to do so) regarding the impact of fasting or medication side effects on her ability to concentrate and remain attentive. Assuming arguendo that Attorney John-Baptiste rendered deficient performance by failing to so inquire, petitioner cannot show the requisite prejudice. Under the prejudice prong of the inquiry, petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693. Here, petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if trial counsel had performed during voir dire as advocated by petitioner. For example, there is no evidence that the Court failed to accommodate the juror's religious needs or her back pain. Rather, the Court explained its accommodation of prior jurors with similar issues and during the trial, the Court made reasonable efforts to accommodate Juror 23. It is not enough to show that the alleged error "had some conceivable effect on the outcome of the proceeding." *Strickland*, at 694. Rather, a petitioner must show that, but for counsel's errors, the result would have been favorably different. *Id*. at 693. This ineffectiveness claim is therefore without merit.

Accordingly, this Court RECOMMENDS that this claim be DENIED.

2.     Ground two:  Failure to impeach an adverse witness with allegedly exculpatory evidence

Petitioner claims trial counsel provided ineffective assistance in failing to impeach the testimony of Fessale, a co-defendant who pled guilty and testified against petitioner and Thomas

---

[10]     TT1 at 66:12-25, 67-70, 71:1-16 (emphasis added).

*Browne v. USA*
Criminal No. 2012-02
Civil No. 2014-58
Page 11

at trial, with a January 11, 2011 "phone record."    Pet'r's Mem. at 13.

"[T]here are a few, if any, cross-examinations that could not be improved upon.  If that were the standard of constitutional effectiveness, few would be the counsel whose performance would past [sic] muster."  *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997).  Thus, "[a]s a general rule, courts defer cross-examination and impeachment strategies to the sound discretion of trial counsel."  *United States v. Scott*, 2015 U.S. Dist. LEXIS 54402 (M.D. Pa. Apr. 27, 2015) (collecting cases); *accord Fithian v. Shannon*, 2002 U.S. Dist. LEXIS 13388, at *14 (E.D. Pa. July 23, 2002) ("Witness examination methods fall within the realm of trial strategy, and necessitate a strong level of deference to the attorney's decisions.") (citing *Diggs v. Owens*, 833 F.2d 439, 444-45 (3d Cir. 1987)).  As one court observed,

> [a] hindsight review of any cross-examination will unquestionably reveal an opportunity to ask one more question or highlight one more point; however, in the midst of a trial with an adverse witness on the stand, a lawyer must always make split-second decisions as to how to best shape his questioning in order to extract the most desirable responses.

*Yarbrough v. Johnson*, 490 F. Supp. 2d 694, 738-739 (E.D. Va. 2007).  Nevertheless, "[i]n certain circumstances, trial counsel's failure to impeach a witness with a prior inconsistent statement may constitute ineffective assistance."  *Rawlins v. United States*, 2013 WL 6182037, at *3 (D.V.I. Nov. 21, 2013) (citing *Moore v. Sec'y Pa. Dept. of Corr.,* 457 Fed. Appx. 170, 182 (3d Cir. 2012) (finding that "counsel's failure to introduce evidence that contradicts a key witness's trial testimony is patently unreasonable").  That is not the case here.

During the trial, Fessale testified about, *inter alia*, events that took place on January 11, 2011 – the day of the robbery.  Relevant here, Fessale testified that on January 11, 2011, **petitioner called Fessale**, stating "it's [i.e., the robbery] a go."  Mar. 26, 2012 Trial Tr. 262:9-18 [DE 119]; *see also* Mar. 27, 2012 Trial Tr. at 11:23-25; 12:1.  Petitioner claims exculpatory evidence exists

*Browne v. USA*
Criminal No. 2012-02
Civil No. 2014-58
Page 12

in the form of "phone records" showing he **<u>never</u>** called Fessale, and faults trial counsel for "failing

to admit" these records into evidence or "use" the records for impeachment purposes.  Pet'r's Mem.

at 12.

   The purported "phone records" are not official records from a phone company.  Rather, the

"phone records" appear in the form of various diagrams – each depicting cellphone graphics and a

typewritten name and number below each graphic.[11]  *See* Pl.'s Mem., Ex. A [DE 125-1].   Here,

petitioner relies specifically on a diagram titled "Calls Made on January 11, 2011. The Day of the

Merchants Bank Robbery."  This particular diagram indicates calls made between Fessale and

Thomas, and between "Oconnel" and Brummell.  *Id.*

   The Court finds no constitutional deficiency in trial counsel's decision not to use or seek to

admit any portion of the "phone records" in order to address the inconsistency identified by

petitioner.  First, petitioner's claim of an alleged inconsistency is speculative.  The diagram depicts

calls made by various parties using their personal cell phones.  While petitioner correctly observes

that his cell phone number is not included in the diagram, petitioner's chain of logic is missing a

crucial link – testimony from Fessale that petitioner's call to Fessale was made via petitioner's

personal cell phone.   Fessale testified only that on the day of the robbery, he "got a call [from

petitioner] saying it's a go."[12]  There is no evidence indicating what phone petitioner used to contact

Fessale.

   Moreover, during cross-examination, trial counsel explored various impeachment avenues

in an attempt to undermine Fessale's credibility.  In particular, he impeached Fessale on cross-

---

[11]  There is no trial testimony regarding these diagrams.

[12]  TT1 at 262:10.

examination with Fessale's statements made to Warrington Tyson, Jr. (the FBI Task Force Agent assigned to investigate the robbery) and to the grand jury,[13] and further questioned Fessale's credibility in closing argument.  In fact, during closing argument, trial counsel expressly commented on the government's failure to "bring any phone records . . . corroborat[ing] that . . . a phone call was . . . received from Shevaun Browne."[14]

Here, trial counsel elicited various responses from Fessale that called his credibility into question on more than one occasion.  Based on this record, petitioner cannot show that counsel's cross-examination fell outside of "the wide range of reasonable professional assistance" or that the trial outcome would have been any different had counsel used different, or additional impeachment and cross-examination tactics.  *Strickland*, 466 U.S. at 689.  As petitioner has not met his burden of showing his counsel provided constitutionally ineffective assistance, he is not entitled to relief on this claim.

Accordingly, this Court RECOMMENDS that this claim be DENIED.

3.    Ground three:  Trial counsel's failure to investigate and call witnesses

Petitioner argues trial counsel's performance was deficient for his failure to investigate, interview and call at trial three witnesses – Kamal Hendricks,[15] Eustace Browne ("Eustace")[16] and Basil Athanase.  Pet'r's Mem. at 15, 27.

---

[13]    *See, e.g.,* TT1 at 296:24-25, 297:15-24, 298:1-7, TT2 at 19:4-8.

[14]    TT3 at 33:16-23; *see also id.* at 27:2-5, 15-17 (noting the government "subpoenaed a bunch of cell phone records and they saw phone calls between [petitioner] and . . . other individuals including Mr. Fessale" yet the government failed to admit the records during the trial).

[15]    Fessale testified that Hendricks was supposed to participate in the robbery with petitioner and Thomas.  TT2 at 51:13-18.

[16]    Eustace – petitioner's uncle and owner of B & B Body Repairs – testified as a government witness.  TT2 at 83-87.

There is no question that defense attorneys have a duty to investigate the circumstances of alleged crimes. *See United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989); *accord Strickland*, 466 U.S. at 691 ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). That said, "diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Accordingly, "trial counsel [is] not bound by an inflexible constitutional command to interview every possible witness." *Lewis v. Mazurkiewicz*, 915 F.2d 106, 113 (3d Cir. 1990); *accord Nealy v. Cabana*, 764 F.2d 1173, 1178 (5th Cir. 1985) ("Defense counsel is not required . . . to investigate everyone whose name happens to be mentioned by the defendant."). In reviewing counsel's decision not to investigate, the court must apply "a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 690-91. Moreover, decisions on which witnesses to call are generally strategic decisions entrusted to counsel and are protected from second-guessing. *Diggs v. Owens*, 833 F.2d 439, 446 (3d Cir. 1987).

Here, petitioner avers that had they been interviewed and subsequently called as defense witnesses, Hendricks, Eustace and Athanase could have provided testimony contradicting Fessale's statements at trial that (1) petitioner was part of a conspiracy to rob Merchant's Bank; (2) Fessale's vehicle was "always staged at B & B's Auto Shop [sic]" for the three robbery attempts as well as the actual robbery;[17] and (3) Fessale dropped his vehicle off at B & B Body Repairs for an oil change. To support this contention, petitioner relies on the following: (1) Hendrick's affidavit[18] in which he claims trial counsel never interviewed him and that he was not party to any meeting to

---

[17]      *See* TT2 at 9:22-25, 10:1-3, 56:3-20.

[18]      *See* Pet'r's Mem., Ex. B at 1 [DE 125-2].

rob Merchant's bank; and (2) Eustace's affidavit[19] in which he states that he moved Fessale's car on January 11, 2011, he never worked on Fessale's vehicle and that Fessale did not park his vehicle by B & B Body Repairs on a daily basis.[20]

Testimony to this effect does not have the import petitioner ascribes to it. Trial counsel's cross-examination of Fessale's testimony indicated numerous impeachment efforts, as discussed *supra*. Moreover, trial counsel reminded the jury of such efforts during closing argument. In fact, during closing argument, trial counsel specifically noted the lack of evidence of a conspiracy or agreement to rob Merchants Bank but for Fessale's testimony to the contrary.[21] He noted, for example, that Keenan George – defense witness and long-time friend of petitioner – testified to never meeting with Fessale and others to discuss the robbery, as claimed by Fessale.[22] As such, trial counsel's "failure" to call Hendricks for impeachment purposes cannot satisfy the *Strickland* prejudice standard. Regarding Eustace's affidavit, it simply restates what he already testified to at trial.[23] As such, Eustace's affidavit adds nothing to the evidence already before the jury.

Petitioner also relies on affidavits provided by witnesses Jacqueline Clendinen (petitioner's then live-in girlfriend),[24] Keenan George, Kennedy Browne (petitioner's father)[25] and Sophia

---

[19]    *See* Pet'r's Mem., Ex. B at 2 [DE 125-2].

[20]    Although petitioner states that he worked for Athanase from August 2010 to January 2012, he provides no details as to the favorable testimony Athanase may have offered. Pet'r's Mem. at 2.

[21]    TT3 at 45:15-18.

[22]    TT2 at 41:15-19, 188:7-10; 281:1-6.

[23]    *See* TT2 at 84:7-14 (stating Fessale's care was "probably [parked] . . . a hundred yards away" from the B & B Body Repairs on January 11, 2011), 85:21-24 (stating he never saw Fessale "in the area" of B & B Body Repairs); 87:14-19 (stating he moved Fessale's vehicle to B & B Body Repairs on the day of the robbery).

[24]    TT2 at 164:17-22.

[25]    TT2 at 151:3-4.

Clendinen (petitioner's friend)[26] in which they state trial counsel never interviewed them.  The Court finds petitioner's argument meritless.  First, all four witnesses testified at trial. Second, three were witnesses subject to cross-examination.  Third, these affidavits provide no insight into what evidence any interviews would have uncovered.  Finally, the affidavits of Clendinen, George and Browne are primarily a restatement of their testimony.  As such, even if trial counsel "failed" to interview these witnesses, there was no prejudice.  *See e.g., Huggins v. United States*, 69 F. Supp. 3d 430, 445 (D. Del. 2014) ("summarily reject[ing]" petitioner's contention that six individuals should have been interviewed and called as witnesses where "all six witnesses testified at trial and were subject to cross-examination").

Accordingly, this Court RECOMMENDS that this claim be DENIED.

4.    Ground four:  Failure to inform jury as to limited purpose of Fessale's guilty plea

Petitioner argues trial counsel rendered ineffective assistance in failing to request that the District Court give a curative instruction to the jury regarding the limited evidentiary purpose of Fessale's guilty plea.[27]

A limiting instruction is justified when evidence – such as the guilty plea of a testifying co-defendant – is admissible for a limited purpose[28] but might also be considered for a purpose

---

[26]    TT2 at 65:22-22.

[27]    The Third Circuit Court of Appeal's model jury instruction regarding a witness's guilty plea is as follows:

You must not consider [the witness's] guilty plea as any evidence of [name of defendant]'s guilt. (His)(Her) decision to plead guilty was a personal decision about (his)(her) own guilt. Such evidence is offered only to allow you to assess the credibility of the witness; to eliminate any concern that (the defendant) (any of the defendants) has been singled out for prosecution; and to explain how the witness came to possess detailed first-hand knowledge of the events about which (he)(she) testified. You may consider (name of witness)'s guilty plea only for those purposes.

*United States v. Crim*, 451 Fed. Appx. 196, 206-07 (3d Cir. 2011) (quoting model instruction 4.19).

[28]    For example, a co-defendant's guilty plea may be admissible to impeach a government witness, or – as done

*Browne v. USA*
Criminal No. 2012-02
Civil No. 2014-58
Page 17

that is impermissible. *See* FED. R. EVID. 105. "[A]dmitting a [co-conspirator's] guilty plea can jeopardize the fundamental fairness of a criminal trial because of the likelihood that the jury may impute a [co-conspirator's] guilt to the defendant." *Gov't of the Virgin Islands v. Mujahid*, 990 F.2d 111, 115 (3d Cir. 1993); *accord Bisaccia v. Attorney Gen.*, 623 F.2d 307, 312-13 (3d Cir. 1980). Thus, "a judge *must* instruct the jury as to the limited purpose of such evidence." *United States v. Crim*, 451 Fed. Appx. 196, 207 (3d Cir. 2011). Specifically, "[t]he instruction to the jury must deal precisely with the issue of how the guilty plea evidence can and cannot be used." *Id.* at 116 (stating "[a]t [the] very least, the district court should instruct the jury that a co-defendant's guilty plea is no proof whatsoever of the defendant's guilt and must be disregarded completely when determining his guilt or innocence").

Here, during Fessale's direct examination, the government elicited testimony about his guilty plea. In particular, Fessale admitted to pleading guilty to bank robbery – the same offense for which defendant was charged and convicted.[29] Also, on cross-examination, Fessale testified that he "entered a plea of guilty."[30] At the charging conference, the District Court instructed the jury regarding Fessale's testimony as follows:

> You've heard the testimony from a witness who either may receive benefits from the Government in connection with this case, or was involved in the commission of offenses related to the crimes alleged against the defendants.
>
> You may give the testimony of that witness such weight as you feel it deserves. Keeping in mind that such testimony must be considered with greater caution and care than that of an ordinary witness.

---

here – to anticipate and defuse a cross-examiner's effort to impeach a government witness's credibility on that basis. *See, e.g., Gov't of the Virgin Islands v. Mujahid*, 990 F.2d 111, 115 (3d Cir. 1993).

[29]    TT1 at 276:10-13.

[30]    TT2 at 21:15-18.

Mar. 27, 2012 TT at 290:6-14. The District Court's instruction did not "deal precisely" with how Fessale's guilty plea "can and cannot be used." *Crim*, 451 Fed. Appx. at 207. Nevertheless, based on *Crim*, the Court finds this instruction was sufficient to inform the jury of the limited purpose for which Fessale's guilty plea could be considered. *See id.* (finding satisfactory the district court's instruction to the jury "to consider testimony of a witness who had reached a plea agreement with the Government 'with care and caution'" and "that 'whether or not the testimony may have been influenced by the plea agreement, grant of immunity, Government promise or any other benefit, is for you to determine'"). Accordingly, it was not deficient performance for trial counsel to fail to raise an argument to the contrary. *See Strickland*, 466 U.S. at 687-91; *see also United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) ("Counsel cannot be ineffective for failing to raise meritless claims"); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Accordingly, this Court RECOMMENDS that this claim be DENIED.

5.    Ground five: Failure to ask for limiting instructions regarding the use of prior inconsistent statements

Plaintiff faults trial counsel for failing to ask for a limiting instruction informing the jury that evidence of Fessale's prior inconsistent statement to the grand jury is admissible to impeach his character and as substantive evidence.[31]

To the extent Fessale's trial testimony varied from his grand jury testimony, the grand jury testimony was itself admissible as substantive evidence. SEE FED. R. EVID. 801(d)(1)(A)

---

[31]    Petitioner specifically cites Fessale's grand jury testimony that Thomas gave him $8,000 a "couple days after" the robbery, but at trial, Fessale testified that Thomas gave him only $6,000. *See* TT1 at 282:22-25, 283:1-15; TT2 at 36:1-4, 38:16-17. The Court notes Fessale also told the grand jury that the handgun used in the robbery came from Thomas; however, at trial, Fessale testified the gun came from petitioner. *See* TT1 at 266:20-22; TT2 at 42:19-25, 43, 44:1-12.

*Browne v. USA*
Criminal No. 2012-02
Civil No. 2014-58
Page 19

(excluding from the definition of hearsay a testifying declarant's prior statement if it was

inconsistent with the current testimony and was given under penalty of perjury at a hearing, or

other proceeding). As such, a limiting instruction <u>as to that statement</u> was not required. *See United*

*States v. Thompson*, 708 F.2d 1294, 1302 (8th Cir. 1983). Accordingly, trial counsel did not err

in failing to ask for a limiting instruction as to Fessale's prior inconsistent statement to the grand

jury. *See Aldea*, 450 F. App'x at 152.

To the extent petitioner faults trial counsel for failing to request a limiting instruction

regarding prior inconsistent statements not made under oath, his argument fares no better. While

trial counsel did not request such an instruction, the District Court specifically instructed the jury

at the close of the trial as to this issue, stating in particular:

> An important part of your job will be making judgments about the testimony of the
> witnesses who testified in this case. You should decide whether you believe what
> each person had to say and how important that testimony was.
>
> . . .
>
> The testimony of a witness may be discredited, or as we sometimes say, impeached,
> by showing that the witness previously made statements which are different than or
> inconsistent with the witness' testimony here in court. *The earlier inconsistent or*
> *contradictory statements are admissible only to discredit or impeach the credibility*
> *of the witness, and not to establish the truth of these earlier statements made*
> *somewhere other than here during this trial.*
>
> If you find that a witness knowingly testified falsely about any important or material
> matter, you may distrust the witness' testimony about other matters. You may reject
> all of the testimony of that witness, or give it such weight or credibility that you
> conclude it deserves.

3/27/12 TT 287:22-25, 288, 289:1-6 (emphasis added).

The District Court should have also given a limiting instruction at the time of Fessale's

testimony. *See United States v. Palumbo*, 639 F.2d 123, 128 (3d Cir. 1981) (stating a court must

give "an explicit admonition to the jury . . . at the time a prior inconsistent statement is admitted,

*Browne v. USA*
Criminal No. 2012-02
Civil No. 2014-58
Page 20

and also an instruction at the close of the trial, that the statement may be considered only as bearing on credibility") (alteration added) (citing *United States v. Ragghianti*, 560 F.2d 1376, 1381 (9th Cir. 1977)).   Nevertheless, the Court finds petitioner cannot establish prejudice arising from counsel's error in not requesting the limiting instruction in accordance with *Palumbo*.   Counsel fully explored the alleged discrepancies between Fessale's trial testimony and his prior statements to both the grand jury and Agent Tyson.

Accordingly, this Court RECOMMENDS that this claim be DENIED.

5.     Ground six:  Cumulative effect of trial counsel's alleged errors

Petitioner argues that the cumulative effect of the conduct addressed above amounts to ineffective assistance of counsel.   "[A] cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (quoting *Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir. 2003)).   A petitioner is entitled to relief based on cumulative errors only if he can establish "actual prejudice." *Id.*

Here, trial counsel's actions did not cause petitioner to suffer actual prejudice. To establish actual prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Petitioner has not shown that any alleged errors here prejudiced him other than by conclusory statements.   Accordingly, petitioner's allegation of cumulative error by counsel does not warrant relief under § 2255.

**B.     Grounds Seven, Eight, Nine and Ten:  Procedurally Defaulted**

Next, petitioner argues that the District Court committed numerous constitutional errors.

*Browne v. USA*
Criminal No. 2012-02
Civil No. 2014-58
Page 21

Petitioner advises that he did not raise these errors on direct appeal because he "had no knowledge of what Appeal Counsel was arguing on direct appeal."  Pet'r's Mot. at 15-16.

If a movant fails to raise a claim that could have been presented on direct appeal, that claim is procedurally defaulted and cannot thereafter be reviewed pursuant to § 2255 unless the movant demonstrates "cause and actual prejudice," or that he is "actually innocent."  *Bousley v. United States*, 523 U.S. 614, 622 (1998).  "Ineffective assistance of [appellate] counsel that rises to the level of a Sixth Amendment violation constitutes cause [i.e., an excuse] for a procedural default." *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) (alterations added) (citations omitted). To prove "actual prejudice," the movant must show that the alleged trial error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions" and that there is a substantial likelihood that, absent the error, a jury would have acquitted him.  *United States v. Frady*, 456 U.S. 152, 170, 172 (1982).

Here, petitioner faults appellate counsel – who also served as trial counsel – for failing to raise on appeal the alleged constitutional errors committed by the District Court.  As explained *supra*, the record does not support a finding that the District Court committed the errors alleged by petitioner.  Given any claims against appellate counsel regarding these same alleged errors are meritless, the Court RECOMMENDS these grounds be DENIED.  *See Aldea*, 450 F. App'x at 152.

## C.    Ground eleven:  Government's failure to correct false testimony

Finally, petitioner asserts that the government suborned perjury by presenting Fessale's testimony that he received a phone call from petitioner on the day of the robbery.  As noted *supra*, petitioner claims evidence exists in the form of "phone records" showing he **never** called Fessale.

"The Supreme Court has long held that the [government's] knowing use of perjured testimony to obtain a conviction violates the Fourteenth Amendment."  *Lambert v. Blackwell*, 387

F.3d 210, 242 (3d Cir. 2004) (alteration added; citations omitted).  In order to sustain a claim of constitutional error under such circumstances, a petitioner must show that a witness actually perjured himself, the government knew or should have known of his perjury,[32] the testimony went uncorrected and there is a "reasonable likelihood that the false testimony . . . affected the judgment of the jury." *Kyles v. Whitley*, 514 U.S. 419, 433 n.7 (1995); *Lambert*, 387 F.3d at 242.

A witness commits perjury if he "gives false testimony concerning a material matter with the *willful intent* to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (emphasis added).  Accordingly, "testimony offered by a witness that contradicts . . . previous testimony by that witness [] is [generally] insufficient to demonstrate perjury." *United States v. Edwards*, 2011 U.S. Dist. LEXIS 133405, at *15 (D.V.I. Nov. 18, 2011).  Furthermore, "[t]he mere presence of inconsistent statements [] does not establish that the prosecutor willfully presented perjured testimony." *United States v. Mershon*, 2010 U.S. Dist. LEXIS 111042, at *21 (E.D. Pa. Oct. 19, 2010) (alterations added).  As recognized by the Third Circuit, "[t]here are many reasons testimony may be inconsistent; perjury is only one possible reason." *Lambert*, 387 F.3d at 249.

Here, petitioner presents no evidence of perjury, let alone "willful intent" on the part of Fessale.  Moreover, even if Fessale perjured himself and the government knew or should have known of this perjury, petitioner fails to demonstrate that "there is any reasonable likelihood that the false testimony could have affected the verdict." *Strickland*, 466 U.S. at 695.  During cross-examination and closing, trial counsel left no stone unturned regarding Fessale's prior inconsistent

---

[32]     *See Kyles v. Whitley*, 514 U.S. 419, 433 n.7 (1995) ("[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair.") (alteration added); *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992) (noting it is fundamentally unfair to an accused "when the government, although not soliciting false evidence, allows [such evidence] to go uncorrected when it appears at trial.") (alteration added; citation omitted).

statements to both the grand jury and Agent Tyson. Also, the government reminded the jury during closing that Fessale "wasn't truthful with Agent Tyson at the beginning."[33]  The evidence – or lack thereof – of Fessale's credibility was there for the jury to weigh.   That the jury chose to believe Fessale's testimony to petitioner's detriment does not support a claim for prosecutorial misconduct.

Accordingly, the Court RECOMMENDS this claim be DENIED.

## IV.    CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's Motion to Vacate, Set Aside or Correct Sentence [DE 124] be DENIED without an evidentiary hearing.[34]  It is further recommended that a certificate of appealability be DENIED.[35]

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

**Dated:** December 8, 2015                                    S_____
                                                             **RUTH MILLER**
                                                             United States Magistrate Judge

---

[33]      TT3 at 14:9.

[34]      The question of whether to order an evidentiary hearing when considering a motion to vacate a sentence under section 2255 "is committed to the sound discretion of the district court."  *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).  Here, the record in this case conclusively shows that petitioner is not entitled to relief. *See Padilla-Castro*, 426 Fed. Appx. at 63.

[35]      When a district court issues a final order on a section 2255 motion, it must make a determination whether it will permit a certificate of appealability.  3d Cir. L.A.R. 22.2; Fed. R. App. P. 22(b)(1).  A district court will issue a certificate of appealability only upon a finding of a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Here, the record fails to show a violation of petitioner's constitutional rights.  Accordingly, a certificate of appealability should be denied.